IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RED PINE POINT LLC,<br><br>Plaintiff,<br><br>-vs.-<br><br>AMAZON.COM, INC. and<br>MAGNOLIA PICTURES LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Honorable James F. Holderman<br><br>Case No. 1:14-cv-00274 |

| | |
|---|---|
| RED PINE POINT LLC,<br><br>Plaintiff,<br><br>-vs.-<br><br>AMAZON.COM, INC. and<br>THE WEINSTEIN COMPANY LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Honorable James F. Holderman<br><br>Case No. 1:14-cv-00290 (consolidated<br>with Case No. 1:14-cv-00274) |

**OPENING BRIEF IN SUPPORT OF
THE MOTION TO DISMISS OF DEFENDANTS AMAZON.COM, INC.;
MAGNOLIA PICTURES LLC; AND THE WEINSTEIN COMPANY LLC**

Adam K. Mortara (#6282005)
adam.mortara@bartlit-beck.com
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440

Daniel C. Taylor (*pro hac vice*)
daniel.taylor@bartlit-beck.com
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140

Counsel for Defendants
AMAZON.COM, INC.;
MAGNOLIA PICTURES LLC; and
THE WEINSTEIN COMPANY LLC

July 15, 2014

# TABLE OF CONTENTS

INTRODUCTION------------------------------------------------------------------------------1

STATEMENT OF FACTS----------------------------------------------------------------------1

    A.    The Parties------------------------------------------------------------------------1

        1.    Red Pine Point LLC ----------------------------------------------------1

        2.    Defendants------------------------------------------------------------------2

    B.    The Red Pine Patents----------------------------------------------------------2

        1.    The '048 Patent ----------------------------------------------------------2

        2.    The '601 Patent ----------------------------------------------------------4

    C.    These Actions --------------------------------------------------------------------5

ARGUMENT ------------------------------------------------------------------------------------5

    I.    THE RED PINE PATENTS ARE INVALID FOR FAILING TO RECITE PATENT-ELIGIBLE SUBJECT MATTER ---------------------5

        A.    The Red Pine Patents Claim an Unpatentable Abstract Principle------------------------------------------------------------------6

        B.    The Red Pine Patents Are Not Patent-Eligible Applications of the Abstract Principle -------------------------------7

    II.    THE MIXED APPARATUS/METHOD CLAIMS OF THE '048 PATENT ARE INVALID UNDER *IPXL* ----------------------------------10

    III.    THE RED PINE PATENTS VIOLATE THE PROHIBITON AGAINST FUNCTIONAL CLAIMING-----------------------------------11

CONCLUSION ----------------------------------------------------------------------------------14

# TABLE OF AUTHORITIES

*Cases:*                                                                                          *Page(s):*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) -----------------------------------------------------------------*passim*

*Apple Inc. v. Motorola, Inc.,*
    Nos. 2012-1548 and 2012-1549, 2014 WL 1646435 (Fed. Cir. Apr. 25,
    2014)------------------------------------------------------------------------------------- 13

*Aristocrat Techs. Aust. Pty. Ltd. v. Int'l Game Tech.,*
    521 F.3d 1328 (Fed. Cir. 2008) -----------------------------------------------------11, 13

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.,*
    133 S. Ct. 2107 (2013) --------------------------------------------------------------------5

*Augme Techs., Inc. v. Yahoo! Inc.,*
    Nos. 2013-1121, 2013-1195, 2014 WL 2782019 (Fed. Cir. June 20,
    2014)------------------------------------------------------------------------------------- 14

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) ------------------------------------------------------- 10

*Bilski v. Kappos,*
    130 S. Ct. 3218 (2010) --------------------------------------------------------------6, 7

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ------------------------------------------------------ 9, 10

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012) ------------------------------------------------------8, 9

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980) --------------------------------------------------------------------5

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
    Nos. 2013-1600 to 2013-1618, 2014 WL 3377201 (Fed. Cir. July 11,
    2014)------------------------------------------------------------------------------------7

*Ex Parte Erol,*
    Appeal No. 2011-001143, 2013 WL 1341107 (P.T.A.B. March 11,
    2013)------------------------------------------------------------------------------------- 12

*Fuller v. Yentzer,*
    94 U.S. 288 (1876)------------------------------------------------------------------------ 11

*Function Media, L.L.C. v. Google, Inc.,*
      708 F.3d 1310 (Fed. Cir. 2013) ------------------------------------------------ 13

*HTC Corp. v. IPCom GmbH & Co., KG,*
      667 F.3d 1270 (Fed. Cir. 2012) ------------------------------------------------ 12

*In re Katz Interactive Call Processing Patent Litig.,*
      639 F.3d 1303 (Fed. Cir. 2011) ------------------------------------------------ 13

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
      430 F.3d 1377 (Fed. Cir. 2005) -------------------------------------------------10, 11

*Linear Tech. Corp. v. Impala Linear Corp.,*
      379 F.3d 1311 (Fed. Cir. 2004) ------------------------------------------------ 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
      132 S. Ct. 1289 (2012) ----------------------------------------------------- 5, 7, 8, 10

*Neurografix v. Siemens Med. Solutions USA, Inc.,*
      No. 10-CV-1990 MRP RZX, 2011 WL 3439324 (C.D. Cal. May 5,
      2011)-------------------------------------------------------------------------------12, 14

*Parker v. Flook,*
      437 U.S. 584 (1978) -----------------------------------------------------------------8

*Soque Holdings (Bermuda) Ltd. v. Keyscan, Inc.,*
      No. C 09-2651, 2010 WL 2292316 (N.D. Cal. June 7, 2010)----------------------------- 12

*Regulations:*

      75 Fed. Reg. 43922 (July 27, 2010)----------------------------------------------------7

*Statutes and Rules:*

      35 U.S.C. § 101------------------------------------------------------------------------5, 6, 9

      35 U.S.C. § 112-------------------------------------------------------------------- 11, 12, 13

      Fed. R. Civ. P. 12(b)(6)---------------------------------------------------------------- 14

*Miscellaneous:*

      Philip Kotler, MARKETING MANAGEMENT
      (10th ed. 2000) ----------------------------------------------------------------------6

## INTRODUCTION

Last month the United States Supreme Court unanimously resolved all doubt about whether patents purporting to own a basic and fundamental economic principle are valid as a matter of law. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). They are not. And if there were any doubt about whether the two patents involved in this case are valid, *CLS Bank* resolved it. They are not.

Here, Red Pine purports to own the basic and fundamental economic concept of "early access"—namely, allowing someone access to something before it is made accessible to others. This staple concept of human commerce was as familiar to ancient merchants as it is to modern Internet businesses. It makes no difference that the Red Pine patents limit this basic concept to the movie industry. And it makes no difference that the Red Pine patents deploy this basic concept with generic computers. Few rules of patent law are as old and uncompromising as this: Confining a basic concept to a specific field of commerce, or implementing it on generic machines, does not transform a basic concept into a patentable invention.

This defect is not the only one affecting the Red Pine patents, as discussed below. All raise pure questions of law—no discovery, no fact, can possibly cure them. Consequently, and for the reasons set forth more fully below, defendants respectfully ask the Court to review these defects now before this case is allowed to metastasize into one more instance where the extraordinary costs and burdens of patent litigation are used to delay, and perhaps even prevent, facially invalid patents from being exposed to the disinfectant of close judicial interrogation.

## STATEMENT OF FACTS

### A.     The Parties

#### 1.      Red Pine Point LLC

Red Pine owns U.S. Patent No. 8,424,048 ("the '048 patent") and U.S. Patent No. 8,521,601 ("the '601 patent"). Red Pine does not make or sell any products or services. It

distributes no movies.  It runs no computer networks.  It's only operations are these law-
suits.

### 2.      Defendants

Defendant Amazon.com, Inc. ("Amazon") is the world's leading online retailer and
one of America's most innovative companies.  Amazon's popular Kindle Fire® tablet pro-
vides users with mobile access to a wide range of digital media, including movies.  De-
fendants Magnolia Pictures LLC ("Magnolia") and The Weinstein Company LLC
("TWC") are independent film studios that offer movies for digital distribution.

### B.      The Red Pine Patents

The Red Pine patents claim to own the basic concept of "early access" to movies,
including access to movies via portable computers.  The '048 patent issued in April 2013
with the title "Portable Electronic Device for Receiving and Playing Feature Length Mov-
ies."  The '601 patent issued in August 2013 with the title "Marketing and Selling Feature
Length Movies over Networks."

### 1.      The '048 Patent

The '048 patent describes the economic disadvantage of the "traditional model" of
movie distribution—namely, releasing movies only in theaters to the general public on a
single day across the country.  ('048 patent, col. 1, l. 27.)  This "traditional model," accord-
ing to the patent, fails to capture additional revenue from a subset of viewers who would be
willing to pay a premium for early access to a movie before the movie is released in thea-
ters to the public at large.  (*Id.* col. 1, ll. 18-53.)  The solution is a pre-release—that is, a
release of the movie to a subset of paying customers (referred to as a "private release
group") before the movie is released to the public.  (*Id.* col. 5, ll. 35-44.)  This "private re-
lease group" consists of viewers who have provided some form of consideration for early
exclusive access, such as by paying a fee, purchasing another good or service, or subscrib-

ing to a particular cellular telephone company.  (*Id*. col. 5, l. 35-col. 6, l. 18; col. 7, ll. 14-
25.)

The pre-release to the "private release group" occurs by sending the movie over
generic computer networks to generic computing devices.  Importantly, the patent is re-
markably candid about its complete indifference to any particular technology.  A movie
can be viewed on any "handheld computing devices, cellular or mobile phones, digital
cameras, portable computers (such as notebook computers), handheld audio playing devic-
es . . . , personal digital assistants (PDAs), combinations of these devices, and other porta-
ble electronic devices and systems."  (*Id*. col. 2, ll. 47-53.)  All devices share the same ge-
neric computing components, such as a "communication system," a "processor,"
"memory," and a "display."  (*Id*. col. 3, ll. 36-38.)  All devices operate over any kind of
network.  "[S]uch networks include, but are not limited to, one or more of computing net-
works or other types of digital networks, such as a digital telephony network, a digital tele-
vision network, or a digital cable network, to name a few examples."  (*Id*. col. 10, ll. 37-
41.)  And all devices communicate with all networks using any kind of medium, including
"direct cable link, Bluetooth, Wi-Fi, infrared links, cellular networks, short messaging ser-
vice (SMS), wireless access protocol (WAP), firewire link, serial link, other wired and
wireless links, etc."  (*Id*. col. 11, ll. 4-7.)  Again, the patents do not claim to have invented,
or to have improved the operation of, any technologies or combination of technologies.

The '048 patent recites 22 claims: 6 drafted as method claims (Claims 15-20) and
16 drafted as mixed apparatus/method claims (Claims 1-14 and Claims 21 and 22).  Claim
1 is representative of the mixed claims.  It requires a generic portable electronic device
with a "body," a "display," and a "processor" that members of a "private release group"
use to purchase, download, and view a feature length movie via a wireless connection (of
any kind) to a network (of any kind) before the movie's public release.  (*Id*. cl. 1.)  The
remaining independent and dependent mixed claims add trivial variations, such as the
method of delivery (*compare id*. (direct wireless download) *with id*. cl. 8 (download from

internet location)) and the type of payment required to be a member of the "private release group" (*compare id.* cl. 4 (extra fee) *with id.* cls. 5 and 6 (purchase of good or service) *and id.* cl. 2 (use of device "manufactured by a specific manufacturer")).

Claim 15 is the only independent method claim. It recites "[a] method of software execution" requiring the same steps as claim 1, namely: members of a private release group purchase, download, and view a feature length movie before its public release via a wireless connection (of any kind) to a network (of any kind) using software (of any kind). (*Id.* cl. 15.) The five dependent method claims add the same trivial variations recited in the dependent mixed claims. (*Id.* cls. 16-20.)

### 2. The '601 Patent

The '601 patent claims the same basic concept, this time combined with generic advertising. The patent describes placing "advertisements and movie trailers" on "heavily trafficked" Internet sites, such as celebrities' web pages or social networking sites. ('601 patent, col. 4, ll. 41-48; col. 15, ll. 53-62.) Viewers of these advertisements then decide whether to buy the advertised product—*i.e.*, whether to become a member of the "private release group" and gain early access to the advertised movie. (*Id.* col. 4, ll. 12-35.) Just like the '048 patent, the '601 patent implements this marketing concept with the same generic portable electronic devices (*id.* col. 11, ll. 24-37), equipped with the same generic communications systems (*id.* col. 12, ll. 31-35), that download movies from the same generic networks (*id.* col. 15, ll. 33-36). And just like the '048 patent, the '601 patent is candid about its technological agnosticism; the patent does not claim to have invented, or to have improved the operation of, any technologies or combination of technologies.

Claim 1 is the '601 patent's only independent claim. It requires a "method executed by a computer system" that displays an Internet advertisement and trailer for a movie that allows individuals to purchase, download, and view the movie on their portable electronic devices before it is publicly released. (*Id.* cl. 1.) The seven dependent claims add

trivial variations, such as the unremarkable concept that customers who buy the movie can resell the movie to others.  (*See id.* cls. 2-8)

### C.    These Actions

On January 15, 2014, Red Pine filed two complaints against Amazon alleging patent infringement.  In Case No. 1:14-cv-00274, Red Pine alleges that Amazon infringed by advertising and distributing the Magnolia movie *Best Man Down* to customers through its popular Kindle Fire® tablet computers before the movie was publicly released.  In Case No. 1:14-cv-00290, Red Pine makes the same allegations against Amazon and TWC based on the advertising and distribution of the movie *Bachelorette* to Kindle Fire® devices.

### ARGUMENT

### I.    THE RED PINE PATENTS ARE INVALID FOR FAILING TO RECITE PATENT-ELIGIBLE SUBJECT MATTER.

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  For over 150 years, the Supreme Court has applied "an important implicit exception" to § 101's seemingly wide breadth:  "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *CLS Bank*, 134 S. Ct. at 2354 (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  The patent law does not allow monopolization of these basic "principle[s] of the physical or social sciences" because they are the "building blocks of human ingenuity," *id*. at 2354, 2359, and should be "free to all men and reserved exclusively to none," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)).

In contrast to an abstract principle itself, a particular application of a principle may be patentable, but only if the patentee has invented something "significantly more."  *CLS Bank*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).  Confining a basic principle

to a particular economic field, or implementing the principle with a "wholly generic computer," is insufficient as a matter of law. *Id*. at 2358. Under these settled principles, Red Pine's patents are invalid under 35 U.S.C. § 101.

## A. The Red Pine Patents Claim an Unpatentable Abstract Principle.

The Red Pine patents claim the abstract principle of early access—*i.e.*, the basic marketing concept of providing some customers access to a good or service before it is available to the general public in exchange for consideration. That concept is not new. Early access is but a species of the well known principle of "[c]ustomer-segment pricing" in which "[d]ifferent customer groups are charged different prices for the same product or service" based on the customers' individual characteristics and preferences. Philip Kotler, MARKETING MANAGEMENT 473 (10th ed. 2000). Red Pine's own allegations describe the patents in exactly these terms. (*See* Case No. 1:14-cv-00274, Compl. ¶ 11 (describing the "solution" provided by the '048 and '601 patents as "segmenting the movie distribution market"); Case No. 1:14-cv-00290, Compl. ¶ 11 (same).)

Merchants have long recognized and catered to the willingness of some customers to pay extra or provide other consideration to obtain early access to a good or service. Airlines allow passengers with elite frequent flier status and more expensive tickets to board an airplane before members of the general public. Amusement parks sell special passes that allow patrons to enter the park early or avoid long queues. Holders of certain credit cards may obtain early access to concert and theater tickets. The list goes on.

Recent Supreme Court decisions confirm that the Red Pine patents are drawn to an unpatentable abstract principle. In *Bilski v. Kappos*, the Court held that a method for "hedging or protecting against risk" in commodities pricing was patent-ineligible because "[h]edging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class." 130 S. Ct. 3218, 3231 (2010). In *CLS Bank*, the Court held that methods of using computers to provide escrow services were patent-

ineligible because they too involved "a fundamental economic practice long prevalent in our system of commerce."  134 S. Ct. at 2356 (quoting *Bilski*, 130 S. Ct. at 3231).  These cases are emphatic in warning against private ownership of "[b]asic economic practices or theories (*e.g.*, hedging, insurance, financial transactions, [or] marketing)."  United States Patent and Trademark Office, "Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of *Bilski v. Kappos*," 75 Fed. Reg. 43922, 43926 (July 27, 2010); *see also* "Preliminary Examination Instructions in view of the Supreme Court Decision in [*CLS Bank*]" (June 25, 2014) (attached as Exhibit A) ("[f]undamental economic practices" are not patentable); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, _ F.3d _, Nos. 2013-1600 to 2013-1618, 2014 WL 3377201, *4 (Fed. Cir. July 11, 2014) (affirming in first Federal Circuit decision applying *CLS Bank* that "fundamental concepts, by themselves, are ineligible abstract ideas").

Just like hedging and escrow services, providing early access to a good or service is a fundamental economic principle long prevalent in our system of commerce and taught in business schools around the country.  The sole question is whether Red Pine's claims recite "significantly more"—that is, whether they recite "additional elements" sufficient to "transform" the claims "into a patent-eligible application" of this principle.  *CLS Bank*, 134 S. Ct. at 2350 (quoting *Mayo*, 132 S. Ct. at 1297-98).

They plainly do not.

### B.    The Red Pine Patents Are Not Patent-Eligible Applications of the Abstract Principle.

First, it makes no difference that Red Pine's patents are confined to the movie industry.  Simply confining a fundamental principle to a particular technological environment or economic field does not make it patentable.  *CLS Bank*, 134 S. Ct. at 2350; *Bilski*, 130 S. Ct. at 3230.  It made no difference that the patent in *Bilski* limited the basic idea of hedging to the commodities and energy markets.  130 S. Ct. at 3231.  It made no difference that the patent in *Parker v. Flook* limited its formula to the petrochemical and oil-refining

industries.  437 U.S. 584, 589 (1978).  And it made no difference that the patent in *Dealer-track, Inc. v. Huber* limited the basic concept of using a clearinghouse to process information to car loan applications.  674 F.3d 1315, 1334 (Fed. Cir. 2012).  That the Red Pine patents limit the basic principle of early access to the movie industry likewise makes no difference to their validity.

It also makes no difference that the Red Pine patents implement this basic principle using wholly generic computers and networks.  The patent in *CLS Bank* used a host of computers to implement the basic concept of an escrow.  134 S. Ct. at 2350.  There, the computers in effect served as an automated escrow agent by obtaining data, adjusting account balances, and issuing instructions to carry out financial transactions only if both parties had sufficient funds to perform.  *Id*. at 2359.  "Given the ubiquity of computers," the gratuitous invocation of "wholly generic computer implementation" was not enough.  *Id*. at 2358.  This is especially true where, as here, all of the required computer functions are "'well-understood, routine, conventional activities' previously known to the industry," and where, as here, the claims do not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *Id*. at 2350-51 (quoting *Mayo*, 132 S. Ct. at 1294).  Just as in this case, the claims in *CLS Bank* amounted to no more than an instruction to take the basic principle and "apply it with a computer." *Id*. at 2350.

Here, the Red Pine patents suffer from the same defect.  True, they require using a generic handheld electronic device.  But *any* kind of device will do, from "cellular or mobile phones" to "notebook computers" to "personal digital assistants" and "other portable electronic devices and systems."  ('048 patent, col. 2, ll. 47-53; '601 patent, col. 11, ll. 24-37.)  The Red Pine patents also require a generic network.  But *any* kind of network will do, from "cellular phone" networks to "satellite networks" to "digital cable networks" and "other types of digital networks."  ('048 patent, col. 10, ll. 18-19, 38-41; '601 patent, col. 14, ll. 6-15.)  And the Red Pine patents require the generic handheld electronic device to

communicate with the generic network using a generic means of data transmission.  But again, *any* means of transmission will do, from "direct cable link" to "Bluetooth" to "Wi-Fi" to "cellular networks" and "other wired and wireless links."  ('048 patent, col. 11, ll. 4-7; '601 patent, col. 15, ll. 33-36.)

These instructions—take any portable electronic device and connect it to any network by any means—amount to nothing more than reciting a basic principle and "adding the words 'apply it with a computer'."  *CLS Bank*, 134 S. Ct. at 2350.  These limitations cannot "impart patent eligibility" because they do nothing to assuage "the pre-emption concern that undergirds [the Supreme Court's] § 101 jurisprudence."  *Id*. at 2358.  Nothing in the Red Pine patents (and they are remarkably candid about this) "purport[s] to improve the functioning" of the computer and network components or "effect an improvement in any other technology or technical field."  *Id*. at 2359.  To the contrary, the Red Pine patents admit to using existing technology in admittedly conventional ways.  (*See* '048 patent, col. 10, ll. 43-45 ("Various alternatives for connecting servers, computers, and networks . . . are known in the art."); '601 patent, col. 14, ll. 17-19 (same).)  Worse yet, the patents purport to appropriate the future inventive work of others by laying claim to "[v]arious types of communication interfaces and data formats, now known or later developed."  ('048 patent, col. 10, ll. 50-51; '601 patent, col. 15, ll. 12-13.)  Because they cover methods and systems "using any existing or future-devised machinery," the computer limitations in the Red Pine patents are in reality no limitations at all.  *Dealertrack*, 674 F.3d at 1334.

Finally, the fact that Red Pine injected apparatus elements into some of the claims makes no difference.  For example, Red Pine attempted to draft claims 1-14 and claims 21 and 22 of the '048 patent in terms of a "handheld portable electronic device."  But courts are not fooled by such labels.  "Regardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, [courts] look to the underlying invention for patent-eligibility purposes."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).  Con-

sistent with this rule, the Supreme Court treated the method and system claims the same in *CLS Bank*, explaining that "[t]he method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." 134 S. Ct. at 2360; *see also CyberSource*, 654 F.3d at 1374-75 (holding unpatentable both method and apparatus claims drawn to abstract idea); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (same). The same is true here. Red Pine's method claims are drawn to the fundamental principle of early access, while the claims with apparatus elements do no more than recite generic computer components configured to implement the same steps. Patentees may not circumvent the prohibition against patenting abstract economic principles through such an obvious trick of "the draftsman's art." *CLS Bank*, 134 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct. at 1294).

For these reasons alone, there is simply no basis for allowing Red Pine to proceed further with this lawsuit.

## II. THE MIXED APPARATUS/METHOD CLAIMS OF THE '048 PATENT ARE INVALID UNDER *IPXL*.

Aside from claiming an unpatentable abstract idea, claims 1-14 and claims 21-22 of the '048 patent suffer from another fatal defect: they are indefinite because they "recit[e] both an apparatus and a method of using that apparatus." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). Such hybrid claims are indefinite because it cannot be known whether *making* an apparatus capable of performing the specified function or *using* the apparatus in the claimed manner infringes the patent. *Id*. The '048 patent evidences that problem in sharp relief. Each of the independent claims 1, 8, and 21 purports to require *both* (1) a handheld portable electronic device *and* (2) explicit user-directed actions which constitute method steps. For example, claim 1 requires that "a private release group of the general public purchases and plays the feature length movie" on the claimed device. ('048 patent, col. 12, ll. 5-6.)

- 10 -

*IPXL* holds that such user-directed language in claims that also require an apparatus makes the claims invalid as indefinite.  430 F.3d at 1384.  The claim at issue in *IPXL* required a system for executing financial transactions "wherein . . . the user uses" the system to either accept or change "the displayed transaction type and transaction parameters."  *Id*.  It was unclear from the face of the claim whether infringement occurred "when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction" or when "the user actually uses the [system] to change transaction information or . . . to accept a displayed transaction."  *Id*.  Just as the *IPXL* claim required that "the user uses," the '048 mixed apparatus/method claims require that the "private release group . . . purchases and plays" the movie (claim 1) or "each of users in the private release group determines a time" to view the movie (claim 8) or a "group of the general public plays" the movie (claim 21).  It cannot be known whether infringement of these claims would occur (1) when a company makes a portable electronic device capable of wirelessly purchasing, downloading, and displaying a movie before its release date, or (2) when a customer actually uses the device to download and view such a movie, or (3) when the movie is subsequently released to the general public.  The '048 mixed apparatus/method claims are thus indefinite under *IPXL*.

### III.    THE RED PINE PATENTS VIOLATE THE PROHIBITON AGAINST FUNCTIONAL CLAIMING.

It has long been the law that a patent "will not be sustained if the claim is for a result."  *Fuller v. Yentzer*, 94 U.S. 288, 288 (1876).  A result is not an invention.  Rather, an invention "consists in the means or apparatus by which [a] result is obtained."  *Id*.  Although the Patent Act does not forbid patentees from including purely functional claim terms, 35 U.S.C. § 112 ¶ 6, such terms are valid only if the patent specification discloses sufficient "structure . . . to perform [the claimed] functions."  *Aristocrat Techs. Aust. Pty. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008).  In the absence of sufficient corresponding structure, "the claim as a whole [is] invalid for indefiniteness."  *Id*.

The same is true for method claims that are "step-plus-function" claims—if all the claim has is a function and there are no corresponding "acts" in the specification sufficient to achieve that function, the claims are indefinite.

The Red Pine patents violate the prohibition against purely functional claiming because they seek to own the naked *result* of technology that transmits feature length movies to customers before public release, no matter how achieved.  Although the claims benefit from a "rebuttable presumption that § 112 ¶ 6 does not apply" because they do not use the words "means for" or "step for," the claims' utter failure to "recite sufficiently definite structure" or any acts beyond generic computer functions readily overcomes that presumption.  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319 (Fed. Cir. 2004); *Neurografix v. Siemens Med. Solutions USA, Inc.*, No. 10-CV-1990 MRP RZX, 2011 WL 3439324, *3 (C.D. Cal. May 5, 2011).

The mixed apparatus/method claims in the '048 patent force the entirety of the purported invention inside one generic claim term—"a processor."  For example, claims 1, 8, and 21 require "a processor" that (1) purchases the movie, (2) downloads the movie, and (3) displays the movie for members of the private release group before its public release.  ('048 patent, cl. 1.)  The method claims in the '048 and '601 patents likewise require only "software" and "a computer system" to achieve the same result.  ('048 patent, cl. 15; '601 patent, cl. 1.)  The terms "processor," "software," and "computer system" are so generic they connote no more structure than the phrase "means for."  *See HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1280 (Fed. Cir. 2012) (terms "processor and transceiver" do not disclose sufficient structure because they "amount to nothing more than a general-purpose computer"); *Soque Holdings (Bermuda) Ltd. v. Keyscan, Inc.*, No. C 09-2651, 2010 WL 2292316, *12 (N.D. Cal. June 7, 2010) (term "'computer' does not adequately describe a specific structure"); *Ex Parte Erol*, Appeal No. 2011-001143, 2013 WL 1341107, *5 (P.T.A.B. March 11, 2013) ("processor" is "a nonce word invoking § 112, sixth paragraph").

- 12 -

Because Red Pine's claims do not specify the structure that achieves the result, the '048 mixed apparatus/method claims are valid only if the specification does so. *See Aristocrat Techs.*, 521 F.3d at 1331. If a patent claims particular computer functions like "a processor for playing a feature length movie" ('048 patent, cl. 1), disclosure of a general purpose computer is not sufficient structure to satisfy § 112 ¶ 6. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 (Fed. Cir. 2011); *Apple Inc. v. Motorola, Inc.*, _ F.3d _, Nos. 2012-1548 and 2012-1549, 2014 WL 1646435, *5 (Fed. Cir. Apr. 25, 2014). The reason is plain. "Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function." *Aristocrat Techs.*, 521 F.3d at 1333 (quoting 35 U.S.C. § 112 ¶ 6); *see also Katz*, 639 F.3d at 1315 (holding claims invalid for functional claiming because "[c]omputers can be programmed to conditionally couple calls in many ways"). Rather, the patent must disclose an "algorithm for performing the [claimed] function." *Aristocrat Techs.*, 521 F.3d at 1331.

The mixed apparatus/method claims fail to meet this standard. The specification discloses nothing more than a generic device that achieves the claimed results by any and all means. To be sure, the specification lists every means of communication and computing under the sun and also seeks to cover "[v]arious types of communication interfaces and data formats, now known or later developed." ('048 patent, col. 10, ll. 50-51; '601 patent, col. 15, ll. 12-13.) But it is not enough to explain that the device transmits and receives data or even to list the "types of connections over which the transmission could occur." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013). Rather, the Red Pine patents must disclose "the algorithm by which the [device] performs the [claimed] function." *Id*. at 1319. It is simply undeniable that the specifications here disclose no such algorithm. At most, they contain several diagrams and flow charts connecting a series of "black box[es] that perform[] the recited function[s]." *Augme Techs., Inc. v.*

*Yahoo! Inc.*, _ F.3d _, Nos. 2013-1121 and 2013-1195, 2014 WL 2782019, *9 (Fed. Cir. June 20, 2014).  But black boxes do not provide "sufficient explanation of the algorithm required to render the [terms] definite."  *Id*.

Red Pine's method claims suffer from the same defect.  They recite particular computer functions like "accessing . . . to purchase" ('048 patent, cl. 15), "displaying . . . the feature length movie" (*id*.), and "selling" the movie ('601 patent, cl. 1), and neither the claims nor the specification provides any specific algorithm for performing any of these functions.  Again, Red Pine's efforts to own all future ways to practice its abstract principle in the movie industry dooms its claims, whether method or mixed apparatus/method. *Neurografix*, 2011 WL 3439324 at *15 (method claim limitations corresponding to means-plus-function limitations in apparatus claims also invalid as indefinite).

Red Pine's patents leave the hard work of true inventing to others.  Red Pine's naked attempt to own a result *qua* result provides yet another reason to declare its patents invalid and dismiss this case now.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss these cases with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,


/s/ Adam K. Mortara
Adam K. Mortara (#6282005)
adam.mortara@bartlit-beck.com
BARTLIT BECK HERMAN
   PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440

Daniel C. Taylor (*pro hac vice*)
daniel.taylor@bartlit-beck.com
BARTLIT BECK HERMAN
   PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO  80202
Tel: (303) 592-3100
Fax: (303) 592-3140

Counsel for Defendants
AMAZON.COM, INC.;
MAGNOLIA PICTURES LLC; and
THE WEINSTEIN COMPANY LLC


July 15, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served by first class mail on July 15, 2014.


                                         */s/ Daniel C. Taylor*
                                         Daniel C. Taylor